NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| TRACEY WILKINSON, | : | |
| | : | |
| Plaintiff, | : | |
| v. | : | Civil Action No. 12-6180 (ES) |
| | : | |
| CAROLYN COLVIN, | : | OPINION |
| COMMISSIONER OF SOCIAL SECURITY, | : | |
| | : | |
| Defendant. | : | |

**SALAS, DISTRICT JUDGE**

Before the Court is an appeal filed by Tracy[1] Wilkinson ("Claimant" or "Ms. Wilkinson") seeking review of the Administrative Law Judge's ("the ALJ") decision denying Claimant's application for Disabled Child's Insurance Benefits under 20 C.F.R. § 404.350. The Court has considered the submissions in support of and in opposition to the present appeal, as well as the administrative record, and decides the matter without oral argument pursuant to Fed. R. Civ. P. 78(b). The Court has subject matter jurisdiction pursuant to 42 U.S.C. § 405(g). For the reasons set forth below, the Court AFFIRMS the Commissioner's decision and DENIES Claimant's appeal.

---

[1] The Court notes that the caption of the case states that Claimant's name is "Tracey," but the record provides that Claimant's name is "Tracy." (*See, e.g.,* R. at 694).

1

**I.     Background**

Ms. Wilkinson is a high school graduate. (R.[2] at 302). She was 18 years old on December 2, 1998, her alleged onset of disability date, and she attained 22 years of age on November 28, 2002. (*See* R. at 270). She has no past relevant work experience. (*See* R. at 298).

On March 29, 1999, after complaining about chronic pelvic pain, Ms. Wilkinson was diagnosed with endometriosis. (*See, e.g.*, R. at 362). On September 23, 1999, however, one of her doctors wrote that "she is feeling much better." (R. at 372).

Ms. Wilkinson was treated by many doctors. Dr. Saroja Malik diagnosed Ms. Wilkinson with endometriosis. (R. at 362, 365). However, at that time, Dr. Malik wrote in a report that Ms. Wilkinson had "minimal endometriosis." (R. at 362). Dr. Malik also ordered an ultrasound of Ms. Wilkinson's pelvis. (R. at 395).

Dr. Nicole Pilevsky performed a laparoscopic procedure on Ms. Wilkinson where she ablated endometriotic lesions with a laser. (R. at 404-05). Before the procedure, Dr. Pilevsky observed that "[a]ll lesions were maximum 7 mm in size and did not appear to be deeply penetrating." (R. at 404.). On July 13, 2000, Dr. Pilevsky wrote in a report, "chronic pelvic pain, mild endo." (R. at 703).

Dr. David B. Redwine performed the following procedures on Ms. Wilkinson: laparoscopy, excision of endometriosis, and laparoscopically assisted vaginal hysterectomy. (R. at 417). Dr. Redwine noted that Ms. Wilkinson had pain relief while using Lupron.[3] (R. at 423, 426).

Ms. Wilkinson was treated by Dr. Francis Kielar, her primary care physician, (R. at 414), and a family medicine specialist, (R. at 16, 131). On November 26, 2002, Ms. Wilkinson told

---

[2] The Court uses the initial "R." to refer to the Administrative Record.

[3] According to Dr. Fechner, Lupron is a treatment used to relieve Endometriosis. (R. at 111).

2

Dr. Kielar that her pain was "more manageable." (R. at 537). On September 23, 2008, Ms. Wilkinson filled out a "Multiple Impairment Questionnaire" that Dr. Kielar signed. (R. at 17).

Finally, Dr. Martin Fechner did not ever treat Ms. Wilkinson. However, Dr. Fechner reviewed Ms. Wilkinson's medical records at the ALJ's request and testified as a medical expert at the second hearing before the ALJ. (R. at 108-09). Dr. Fechner testified that he believed that Ms. Wilkinson could do light work. (R. at 112).

On November 13, 2007, Ms. Wilkinson filed an application for Disabled Child's Insurance Benefits, alleging disability beginning December 2, 1998. (R. at 9, 295). The application was initially denied on March 12, 2008, and again on Reconsideration on July 17, 2008. (R. at 138-47). On August 14, 2008, Ms. Wilkinson filed a written request for a hearing. (R. at 153). This request was granted and, on December 7, 2009, Ms. Wilkinson appeared before ALJ Donna A. Krappa. (R. at 9). On June 28, 2010, Ms. Wilkinson appeared at a supplemental hearing before the ALJ. (*Id.*).

At both the December 7, 2009 and June 28, 2010 hearings before the ALJ, Ms. Wilkinson complained of three main impairments: endometriosis, fibromyalgia, and psoriatic arthritis. (R. at 33; *see also* R. at 107 (At the November 28, 2002 hearing before the ALJ, Ms. Wilkinson's counsel stated "the big three [alleged impairments are] endometriosis, the psoriatic arthritis, and the fibromyalgia.")). Ms. Wilkinson's alleged Lyme disease was also considered at the second hearing. (*See* R. at 111-12).

On October 20, 2010, the ALJ issued an Opinion denying Ms. Wilkinson's disability application. (R. at 9-21). On November 4, 2010, Ms. Wilkinson filed a Request for Review from the Appeals Council, seeking review of the ALJ's decision. (*See* R. at 5). On June 15, 2012, the Appeals Council denied the appeal, concluding that there were no grounds for review,

and informed Ms. Wilkinson that, should she disagree with this decision, she may file a civil action in federal court. (R. at 1-4). On October 2, 2012, Ms. Wilkinson commenced the instant action. (*See* D.E. No. 1, Complaint).

## II. Legal Standard

### A. Standard of Review

The Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. §§ 405(g) and 1383(c)(3). The Court must affirm the Commissioner's decision if it is "supported by substantial evidence." 42 U.S.C. § 405(g). "Substantial evidence does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)) (internal quotations omitted). In addition, the Court is bound by the ALJ's findings that are supported by substantial evidence "even if [it] would have decided the factual inquiry differently." *Id.*

Regarding the ALJ's assessment of the record, the Third Circuit has stated, "[a]lthough the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000). However, the Third Circuit subsequently elaborated that "*Burnett* does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis. Rather, the function of *Burnett* is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004).

This Court is limited in its review because it cannot "weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992).

### B. Determining Social Security Benefits

To qualify for Disabled Child's Insurance Benefits, the claimant must first establish that she is "disabled." 42 U.S.C. § 1381. "Under the Social Security Act, a disability is established where the claimant demonstrates that there is some medically determinable basis for an impairment that prevents [her] from engaging in any substantial gainful activity for a statutory twelve-month period." *Fargnoli v. Halter*, 247 F.3d 34, 38-39 (3d Cir. 2001) (internal citations and quotations omitted). A claimant is disabled for these purposes only if her physical or mental impairments are "of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A physical or mental impairment is an "impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3).

The Social Security Administration has established the following five-step, sequential evaluation process to determine whether an individual is disabled:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. . . .
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 416.909, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. . . .

5

>(iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 to subpart P of part 404 of this chapter and meets the duration requirement, we will find that you are disabled. . . .
>
>(iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. . . .
>
>(v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled. . . .

20 C.F.R. § 416.920(a)(4).

### C. Burden of Proof

The five-step sequential evaluation process involves a shifting burden of proof. *See Brewster v. Heckler*, 786 F.2d 581, 583-84 (3d Cir. 1986); *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983). At step one, the claimant has the burden of establishing that she has not engaged in "substantial gainful activity" since the onset of the alleged disability and at step two that she suffers from a "severe impairment" or "combination of impairments." 20 C.F.R. § 416.920(a)-(c). If the claimant is able to demonstrate both that she has not engaged in substantial gainful activity and that she suffers from a severe impairment, the claimant must then demonstrate—at step three—that her impairments are equal to or exceed one of the impairments listed in Appendix 1 of the regulations. 20 C.F.R. § 416.920(d). If she is able to make this showing, then she is presumed disabled. 20 C.F.R. § 416.920(a)(4)(iii). If she cannot show that she meets or exceeds a listed impairment, at step four she must show that her residual functional capacity ("RFC") does not permit her to return to her previous work. 20

6

C.F.R. § 416.920(e)-(f). If the claimant meets this burden, then at step five the burden shifts to the Commissioner to demonstrate that the claimant can make an adjustment to other work. 20 C.F.R. § 415.920(g); *see also Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). If the Commissioner cannot show that the claimant can make an adjustment to other work, the claimant will be found disabled. 20 C.F.R. § 416.920(a)(4)(i).

### III. ALJ Krappa's Opinion

At step one, the ALJ determined that Ms. Wilkinson "has not engaged in substantial gainful activity since December 2, 1998, the alleged onset date." (R. at 12).

At step two, the ALJ determined that Ms. Wilkinson had one severe impairment, endometriosis. (R. at 12). However, the ALJ determined that the Ms. Wilkinson's alleged psoriatic arthritis, fibromyalgia, and Lyme disease were non-medically determinable and thus did not constitute "severe impairments" for purposes of the ALJ's step two analysis. (R. at 12-13).

At step three the ALJ determined that Ms. Wilkinson "did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (R. at 13).

In assessing Ms. Wilkinson's RFC, the ALJ found that "prior to attaining age 22, [Ms. Wilkinson] was capable of the exertional demands of light work." (R. at 13-20). In making the RFC determination, the ALJ stated "during the period under consideration . . . [Ms. Wilkinson] did experience near total pain relief when being treated with Lupron." (R. at 19). The ALJ also found that Ms. Wilkinson's diagnosis of endometriosis was a "mild-to-minimal" condition. (R. at 19). Further, the ALJ found that Ms. Wilkinson's treating physician, Dr. Kielar, noted that "some two months after her hysterectomy [Ms. Wilkinson] felt overall better and her pain was more manageable." (R. at 19, 537).

7

At step four, the ALJ found that Ms. Wilkinson "has no past employment that qualifies as 'prior relevant work' [and so] there [was] no need to determine whether [Ms. Wilkinson] is able to return to any 'prior relevant work' under the [RFC] found above." (R. at 20).

At step five, the ALJ found that "considering [Ms. Wilkinson's] age, education, work experience and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Ms. Wilkinson] can perform." (R. at 20-21). Pat Green, a vocational expert, testified at both hearings before the ALJ. (R. at 82-91, 118-25).

Accordingly, the ALJ found that Ms. Wilkinson was not disabled, as defined in the Social Security Act, at any time prior to November 27, 2002, the date she attained age 22. (R. at 21).

**IV.   Discussion**

On appeal, Ms. Wilkinson argues that the ALJ erred as a matter of law in determining that (1) Ms. Wilkinson only filed a Disabled Child's Insurance Benefits claim rather than also a Social Security claim; (2) Dr. Fechner is a qualified expert; (3) Ms. Wilkinson's fibromyalgia, psoriatic arthritis, and Lyme disease are not severe impairments; (4) these impairments do not satisfy any of the step three listings; (5) Ms. Wilkinson has the RFC to perform light work; and (6) there are jobs in sufficient numbers in the national economy for someone with Ms. Wilkinson's RFC. (D.E. No. 10, Brief of Plaintiff Tracey Wilkinson ("Pl. Br.") at 8-13). Ms. Wilkinson asks the Court to reverse the Commissioner's final administrative decision and order the payment of benefits. (*Id.* at 8). In the alternative, Ms. Wilkinson asks the Court to remand this case to the Commissioner for a new hearing and a new decision. (*Id.*). For the reasons stated below, the Court rejects Ms. Wilkinson's contentions.

**A. There is Only Record Evidence of One Benefits Claim**

Construing liberally, Ms. Wilkinson argues that it is unclear from the record whether the ALJ should have ruled on two disability claims, rather than only one: (1) one claim on the work record of Ms. Wilkinson's disabled father (SS # -xx16) and (2) another claim based on a potential Supplemental Security Income ("SSI") application under Ms. Wilkinson's own social security number (SS # -xx14).[4] (Pl. Br. at 29-31). Defendant did not respond to this argument directly but did state that the instant action arises from a disability claim filed in November 2007 by citing to the record. (Def. Br. at 2 (citing R. at 270-72, 294-95)).

A district court has the "power to enter, *upon the pleadings and transcript of the record*, a judgment affirming, modifying, or reversing the decision of the Commissioner." 42 U.S.C. § 405(g) (emphasis added).

Here, Ms. Wilkinson fails to cite any evidence in the record of an additional application for benefits aside from Ms. Wilkinson's Disabled Child's Insurance Benefits claim. This action is before the Court as an appeal and the Court's review is accordingly limited to the record. Further, Ms. Wilkinson's attorney did not argue that there was a SSI claim distinct from the Disabled Child's Insurance Benefits claim at either of the two in-person hearings before the ALJ. (*See* R. at 32-33).[5] Ms. Wilkinson herself also did not testify that there were two applications. (R. at 94). Finally, the Complaint also does not indicate that there were two different applications for disability benefits. (*See* D.E. No. 1 ¶ 4).

---

[4] The Court notes that Ms. Wilkinson's brief attributes the social security numbers incorrectly: for example, the brief states that Ms. Wilkinson's social security number is (SS# -xx16). (*Compare* R. at 270 *with* Pl. Br. at 29).

[5] At the first hearing, Ms. Wilkinson's counsel stated, "Child disability benefits is the claimant asking for disability that has to be established between the ages of 18 and 22 . . . . This application was originally filed, I believe, in the year 2007, retrospectively, with an onset of December 1998." (R. at 32). The Court's review of the record does not indicate any other application for benefits.

9

Thus, the Court finds no basis for remanding any portion of the instant case to explore whether there was an additional benefits application filed.

### B.  Dr. Fechner is Qualified to Opine on Medical Conditions Outside His Specialty

As noted above, Dr. Fechner served as the medical expert at the second ALJ hearing.  (R. at 108).  Ms. Wilkinson essentially argues throughout her brief that the ALJ's reliance on Dr. Fechner's testimony does not constitute reliance on substantial evidence because Dr. Fechner is an internist and therefore not an expert in the medical fields of Ms. Wilkinson's impairments: gynecology, rheumatology, and hematology.  (Pl. Br. at 15-19).  In response, Defendant argues that Dr. Fechner is qualified to opine on medical conditions beyond his medical specialty.  (Def. Br. at 12).

The Third Circuit has rejected the argument that an ALJ must appoint a medical expert within the particular medical field of each disability claimed by the claimant.  *See Kenney v. Comm'r of Soc. Sec.*, 232 F. A'ppx 183, 187 (3d Cir. 2007) ("the cases cited by [plaintiff] . . . do not provide for the appointment of a medical expert within a particular specialty.  We find this claim lacks merit.").

While Ms. Wilkinson insists that Dr. Fechner is not an expert in gynecology, Ms. Wilkinson cites no legal authority to support her argument that Dr. Fechner should not be accorded the status of a medical expert.  Indeed, the Third Circuit has flatly rejected this argument.  *See Kenney*, 232 F. App'x at 187.  Thus, the Court finds that it was proper for the ALJ to treat Dr. Fechner's testimony as expert testimony.

### C. The ALJ's Step Two Determination on Claimant's Psoriatic Arthritis, Fibromyalgia, and Lyme Disease is Supported by Substantial Evidence

Ms. Wilkinson argues that the ALJ erred by relying on the opinion of Dr. Fechner in deciding that Ms. Wilkinson did not suffer from a "severe" manifestation of psoriatic arthritis, fibromyalgia, and Lyme disease because Dr. Fechner is not sufficiently-qualified to opine as an expert. (Pl. Br. at 15-16). Defendant argues that Ms. Wilkinson has the burden at step two and Ms. Wilkinson has failed to cite any medical evidence which establishes psoriatic arthritis, fibromyalgia or Lyme disease as "severe" impairments. (Def. Br. at 10-11).

As noted above, step two of the disability analysis determines whether a claimant has a "severe medically determinable . . . impairment that meets the duration requirement in § 416.909." 20 C.F.R. § 416.920(a)(4). Impairments must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not merely by claimant's own statements. 20 C.F.R. §§ 416.908, 416.928. For an impairment to be severe, it must significantly interfere with basic work activities. 20 C.F.R. § 416.921(a).

Here, the ALJ's finding was supported by substantial evidence and was adequately explained in the record. As noted above, at step two, "[i]mpairments must be established by medical evidence." 20 C.F.R. §§ 416.908, 416.928. In Ms. Wilkinson's brief, however, she does not cite any medical evidence in the record indicating psoriatic arthritis, fibromyalgia, or Lyme disease before Ms. Wilkinson was twenty-two years old.

The ALJ credited Dr. Fechner's testimony as to psoriatic arthritis: Dr. Fechner testified that "[t]he rheumatologist, Dr. Ritter, saw [Ms. Wilkinson] in April 27th of '04. And there was a full range of motion of all the joints. There was no synovitis, no deformity. The psoriatic arthritis is very specific and there's specific things that you look for . . . it's just not in the chart, as far as I can see." (R. at 13, 110).

11

The ALJ also credited Dr. Fechner's testimony as to fibromyalgia – Dr. Fechner testified that "Dr. Ritter, the rheumatologist in . . . April of '04 . . . did make the diagnosis of fibromyalgia," (R. at 111), but he also noted that there was no fibromyalgia diagnosis before November 28, 2002 in the record.[6]  (R. at 13).

Finally, the ALJ credited Dr. Fechner's testimony as to Lyme disease.  Dr. Fechner testified that "the reason for testing for Lyme Disease is that the doctors were not satisfied with the other diagnoses.  Well, [the Lyme disease testing] was negative, also."  (R. at 13, 111-12; *see also* R. at 519 ("Lyme Disease Screen . . . Negative . . . Not consistent with Lyme disease.")).

While "the burden placed on an applicant at step two is not an exacting one," *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004), Ms. Wilkinson has failed to meet that burden in this case.  *See Kirk v. Comm'r of Soc. Sec.*, 177 F. App'x 205, 207 n.3 (3d Cir. 2006) ("Here, by contrast [to *McCrea*], the record lacks meaningful support of [plaintiff's alleged impairments].").  Accordingly, since Ms. Wilkinson cites to no contrary medical evidence and the Court's review of the record does not reveal any such evidence, the ALJ's decision at step two as to Ms. Wilkinson's alleged psoriatic arthritis, fibromyalgia, and Lyme disease was supported by substantial evidence.

### D. Step Three: The ALJ's Step Three Analysis is Supported by Substantial Evidence

Construing liberally, Ms. Wilkinson argues that the ALJ erred at step three by not finding that the evidence of "sweats, hot flashes, headaches, dizziness, weight changes, arthritic symptoms, joint disorders, . . . insomnia, depression, and mood swings, . . . bone loss, osteopenia and psoriatic arthritis . . . [and] abnormal blood chemistries" constituted an impairment equal to one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R.

---

[6] As noted above, Ms. Wilkinson reached the age of twenty-two on November 28, 2002, and that date marks the end of the relevant time period analyzed by the ALJ.

12

404.1520(d), 404.1525 and 404.1526).  (Pl. Br. at 18-19).  Ms. Wilkinson further reiterates her argument against the ALJ's use of Dr. Fechner's testimony.  (*Id.* at 17-19).  Ms. Wilkinson also argues that the ALJ's Opinion is deficient because its "step three finding . . . doesn't mention a listing paragraph."  (*Id.* at 18-19).  Finally, Ms. Wilkinson argues that the ALJ did not mention several of her symptoms.  (*Id.* at 18).

Defendant argues that Ms. Wilkinson has failed to meet her burden to establish that her impairments were severe enough to satisfy the criteria of a listed impairment.  (Def. Br. at 11-12).  Defendant also argues that the evidence in the record demonstrates that Ms. Wilkinson's impairment did not satisfy the criteria of a listed impairment.  (*Id.*).  Finally, Defendant reiterates that Dr. Fechner is a suitable medical expert and the ALJ may rely on his findings.  (*Id.* at 12).

For step three of the disability analysis, the ALJ is required to compare the combined effect of all of Ms. Wilkinson's impairments with one or more of the Commissioner's listings or determine if the Ms. Wilkinson's impairment is medically equivalent to one of the listings.  20 CFR 404.1526(a); *see also Torres v. Commissioner*, 279 F. App'x. 149 (3d Cir 2008).  A claimant must satisfy all of the specified criteria of a listing in order to show that an impairment matches a listing or that an unlisted impairment is equivalent to a listed impairment.  *Sullican v. Zebley*, 493 U.S. 521, 530-31 (1990).  "The claimant bears the ultimate burden of establishing steps one through four."  *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007).

Here, as noted above, the ALJ need not appoint a medical expert within the field of a claimant's condition.  *See Kenney*, 232 F. App'x at 187 ("the cases cited by [plaintiff] . . . do not provide for the appointment of a medical expert within a particular specialty.  We find this claim lacks merit.").  Thus, the ALJ properly relied on Dr. Fechner's opinion at step three.

Next, Ms. Wilkinson highlights the fact that the ALJ did not mention a specific listing paragraph. However, "there is no requirement that the ALJ must identify or analyze the most relevant Listing." *Ochs v. Comm'r of Soc. Sec.*, 187 F. A'ppx 186, 189 (3d Cir. 2006). Furthermore, Ms. Wilkinson did not highlight any relevant listings at either of the ALJ hearings, (*see* R. 91-95, 125-36), and does not offer any here on appeal, (*see* Pl. Br. at 17-19).

Finally, regarding the fact that the ALJ's Opinion did not mention several of Ms. Wilkinson's symptoms, the Third Circuit does not require that every single detail of Ms. Wilkinson's medical history be mentioned in an ALJ opinion, rather the Third Circuit requires that a reviewing court be able to subject an ALJ opinion to "meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004). Thus, in light of the facts of this case, the ALJ did not err by failing to mention every symptom Ms. Wilkinson suffered from.

The Court finds that, assessing the record as a whole[7], the ALJ's step three finding is supported by substantial evidence because the ALJ performed an extensive review of the record evidence and clearly articulated reasons for how this evidence was weighed and credited, especially in the ALJ's RFC determination, as detailed below.

### E.  The ALJ's RFC Determination is Supported by Substantial Evidence

In order to rule on steps four and five, an ALJ must make a RFC determination. 20 C.F.R. § 416.920(a)(4)(iv). Ms. Wilkinson argues that the ALJ's RFC determination is not supported by substantial evidence because the ALJ's Opinion does not mention Dilaudid, a pain medication that Ms. Wilkinson was prescribed. (Pl. Br. at 27). Ms. Wilkinson further argues that the ALJ erred by relying on Dr. Fechner because Dr. Fechner did not testify about Ms.

---

[7] *See Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) ("In this case, the ALJ's decision, *read as a whole*, illustrates that the ALJ considered the appropriate factors in reaching the conclusion that [claimant] did not meet the requirements of any listing.") (emphasis added).

14

Wilkinson's Dilaudid prescription on direct examination and instead only addressed Dilaudid on cross-examination.  (*Id.* at 24-25).  Ms. Wilkinson further argues that the ALJ improperly concluded that Ms. Wilkinson is lazy rather than disabled.  (*Id.* at 27).  Ms. Wilkinson also points out that Dr. Fechner is not a gynecologist, yet he acknowledged that Lupron use is risky.  (*Id.* at 25).

Additionally, Ms. Wilkinson argues that the RFC determination did not include "biopsies, two laparoscopies, a total hysterectomy and many other procedures requiring hospital admissions, which would have prevented Ms. Wilkinson from performing any work activity during admission, the period before and the period after these hospitalizations."  (*Id.* at 32).[8]  Ms. Wilkinson argues that the RFC does not "discuss or acknowledge the side effects of the medications [Ms. Wilkinson] was taking."  (*Id.*).  Finally, Ms. Wilkinson argues that the ALJ does not mention that Ms. Wilkinson was treated by Dr. Redwine.[9]  (*Id.*).

Defendant counters that the ALJ's RFC determination is supported by substantial evidence because the ALJ may properly rely on a medical expert's opinion on medical matters outside of his specialty.  (Def. Br. at 15).  Defendant also argues that Dr. Malik and Dr. Pilevsky opined that Ms. Wilkinson's endometriosis was either minimal or mild.  (*Id.* at 14-16).  Defendant also argues that the ALJ properly relied on the record evidence that Ms. Wilkinson's pain was relieved by Lupron shots.  (*Id.*).

RFC is an administrative assessment of a claimant's maximum sustained ability to perform work activity.  20 C.F.R. § 404.1545; SSR 96-8p, 1996 WL 374184 (July 2, 1996).  RFC is the most a claimant can do despite her impairment.  *Id.*  The ALJ must assess RFC by a

---

[8] Ms. Wilkinson divides her RFC arguments among two different sections of her brief.  (*See* Pl. Br. at 24-29, 31-32).

[9] Contrary to Ms. Wilkinson's statement in her brief, the ALJ's Opinion does, in fact, consider evidence from Dr. Redwine, albeit without mentioning that Ms. Wilkinson flew to Oregon to be treated by him.  (R. at 16).

15

two-step process, first considering all symptoms "which . . . can reasonably be accepted as consistent with the objective medical evidence and other evidence," then, second, determining how the symptoms "affect [a claimant's] ability to work." 20 C.F.R. § 404.1529.

Here, the ALJ *explained how she determined Ms. Wilkinson's RFC*, stating that "on November 26, 2002, (just two days prior to [Ms. Wilkinson's] 22nd birthday), Dr. Kielar wrote in a progress note: that [Ms. Wilkinson] felt overall better; that her pain was more manageable; and that she had ceased most of her pain medication." (R. at 18, 537). The ALJ further explained that

> "[p]ursuant to 20 C.F.R. 404.1527(d)(2), the treating physicians' and surgeon's opinions – that the claimant's endometriosis was a mild-to-minimal impairment; that her endometriosis should have been eliminated after a vaginal hysterectomy; that she was able to work when being treated with Lupron shots; and that she was feeling better two months post-hysterectomy are afforded controlling weight – as those opinions are supported by the medical evidence of record until the claimant's 22nd birthday."

(R. at 20). The ALJ weighed this evidence against the record evidence of Ms. Wilkinson's pain and alleged limitations[10] and determined that Ms. Wilkinson was capable of work at the light level. *See Jones*, 364 at 505.

The ALJ further supported her RFC determination, by referring to the opinions of Dr. Malik and Dr. Pilevsky. Although in her Opinion, the ALJ did not refer to Dr. Malik or Dr. Pilevsky by name, the ALJ did cite the medical records they produced, stating "claimant's residual functional capacity assessment prior to attaining age 22 is supported by the following evidence [:] . . . medical records stating that while the claimant did have a diagnosis of endometriosis, it was a mild-to-medium impairment." (R. at 18-19; (citing R. at 362 (On March

---

[10] (*See* R. at 14) (The ALJ's Opinion states "When asked why [Ms. Wilkinson] is unable to work, the claimant stated that she could not sustain a job as the week prior to the hearing she had two days when she was unable to get out of bed."); (*See* R. at 15) ("[Ms. Wilkinson] stated that she suffers from all over joint pain . . . She states that [her pain and fatigue] are incapacitating and make her feel like she has been 'hit by a truck.'").

16

29, 1999, Dr. Malik wrote, "[Ms. Wilkinson] had . . . *minimal* endometriosis"); R. at 703 (On July 13, 2000, Dr. Pilevsky wrote, "chronic pelvic pain, *mild* endo"))) (emphasis added). Although the ALJ did not specifically mention any of the side effects that Ms. Wilkinson suffered from her medications, the ALJ's Opinion is sufficient to allow for meaningful judicial review.

The ALJ further gave some indication for *why she rejected certain evidence*, stating "I find [Dr. Kielar's] opinion to be problematic. First [,] . . . he lists a number of diagnoses . . . for which Dr. Fechner found no evidence in the record. Secondly [,] . . . claimant admitted that she has completed [a questionnaire] for the doctor's review." (R. at 16). Thus, the ALJ found "Dr. Kielar's opinion to be not entitled to any significant weight . . . . It is clearly inconsistent with the evidence of the claimant's condition during the period under consideration." (R. at 17). The ALJ also considered Dr. Daiter's letter, but noted that Dr. Daiter "cautiously refused to opine upon the extent of any pain that the claimant might be experiencing." (R. at 18).

The ALJ found that Ms. Wilkinson was not a credible witness because the ALJ found that she "clearly embellished her symptoms" because she completed a form that assessed her medical condition "in a painstaking manner" and then Dr. Kielar signed the form. (R. at 19). The ALJ further supported this finding of embellishment by citing to medical evidence in the record that contradicted Ms. Wilkinson's alleged pain. (R. at 20).[11]  By assessing Ms. Wilkinson's credibility and the medical evidence in the record, the ALJ sufficiently considered the evidence of Ms. Wilkinson's pain, thereby effectively addressing Ms. Wilkinson's arguments regarding Dilaudid. Thus, since the ALJ considered Ms. Wilkinson's alleged pain, in light of the entire record, Ms. Wilkinson's arguments related to her Dilaudid prescription are unavailing.

---

[11] *See Hartranft v. Apfel*, 181 F.3d 358, 361-62 (3d Cir. 1999) (affirming a ruling where the ALJ denied benefits because "the ALJ thought that [claimant's] testimony about the extent of his pain was exaggerated.").

17

Given the record evidence that the ALJ highlighted, the ALJ's RFC determination is based on substantial evidence. The ALJ has provided enough relevant evidence that "a reasonable mind might accept as adequate to support [the] conclusion" that Ms. Wilkinson's RFC is light work. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

## A. The ALJ's Step Five[12] Analysis is Supported by Substantial Evidence

Ms. Wilkinson argues that the ALJ's step five decision is not based on substantial evidence for two reasons. (Pl. Br. at 31-32). First, Ms. Wilkinson argues that the vocational expert's testimony was based on the testimony of Dr. Fechner, who Ms. Wilkinson again argues is not a suitable expert. (*Id.* at 32). This argument has been rejected several times in this case and the Court rejects it again here at step five. *See Kenney*, 232 F. A'ppx at 187.

Second, Ms. Wilkinson makes several arguments related to the testimony of the vocational expert. Ms. Wilkinson seems to argue that the ALJ's Opinion is not based on substantial evidence because the vocational expert's opinion of how many suitable jobs exist in the national economy was suspect. (Pl. Br. at 29, 32). Ms. Wilkinson seems to argue that the vocational expert's opinion was suspect because the vocational expert testified that a similar number of jobs were available even though the ALJ asked the vocational expert to assume two different levels of limitation that a hypothetical claimant might have.[13] (*Id.* at 32). Ms. Wilkinson further seems to argue that the ALJ did not properly consider SSR 83-12, 1983 WL 31253. (*Id.* at 32-33).

---

[12] Ms. Wilkinson has no relevant work history, so there is no step four analysis. *See* 20 C.F.R. § 404.1565.

[13] During the first hearing, the ALJ asked the vocational expert to assume that a hypothetical claimant must be given an opportunity "at the *hour* mark to stand and stretch for three to five minutes." (R. at 86) (emphasis added). However, at the second hearing, the ALJ asked the vocational expert to assume that a hypothetical claimant must be given an opportunity to stretch at "the *45 [minute] to one-hour mark*. (R. at 120) (emphasis added).

Defendant argues that the ALJ's step five determination was supported by substantial evidence because the ALJ "must only convey all of a claimant's credibly established limitations" to the vocational expert and the ALJ did so in this case. (Def. Br. at 20).

An ALJ "must accurately convey to the vocational expert all of a claimant's *credibly established limitations*." *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005) (emphasis in original).

While Ms. Wilkinson argues that the ALJ failed to reconcile how the vocational expert's opinion on jobs available was unchanged despite the different hypothetical limitations posed to her, Ms. Wilkinson fails to cite any authority that shows that such a deficiency ever compelled a judge to remand. Ms. Wilkinson has also failed to pinpoint a credibly established limitation that the ALJ did not present to the vocational expert. Ms. Wilkinson further failed to adequately explain how SSR 83-12 should have affected the ALJ's step five analysis because SSR 83-12 states "[i]n cases of unusual limitations of ability to sit or stand, a [vocational expert] should be consulted to clarify the implications for the occupational base." SSR 83-12, 1983 WL 31253, at *4 (Jan. 1, 1983). In this case, a vocational expert did testify.

The ALJ came to a step five decision by crediting the testimony of the vocational expert. (R. at 21). Ms. Wilkinson has failed to raise any indication that the ALJ's decision was not based on substantial evidence. Further, the Court's review of the record and law shows this was proper. Therefore, the ALJ's step five decision is proper.

**V.    Conclusion**

For the foregoing reasons, the Court AFFIRMS the Commissioner's decision and DENIES Ms. Wilkinson's appeal.

s/*Esther Salas*
**Esther Salas, U.S.D.J.**
